IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ARIZONA LIBERTARIAN PARTY, INC.; BARRY HESS; PETER SCHMERL; JASON AUVENSHINE; ED KAHN,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>JANICE K. BREWER, Arizona Secretary of State,<br><br>　　　　　Defendant. | No. 02-144-TUC-RCC<br><br>**ORDER** |

The Court of Appeals remanded this action to determine "whether non-member's participation in the selection of Libertarian candidates is unconstitutional and, if not whether the provisions related to the election of Libertarian precinct committeemen are severable." *Ariz. Libertarian Party, Inc. v. Bayless*, 351 F.3d 1277, 1282 (9th Cir. 2003).

The Court holds the burden imposed by Arizona's Primary Election System allowance of non-Libertarian's participation of the selection of Libertarian candidates on the Arizona Libertarian Party's ("ALP") associational rights is severe. The State has failed to show a narrowly tailored, compelling interest sufficient to justify the imposition of such a burden. Therefore, Arizona's primary system as applied to the ALP is unconstitutional.

Since the Court finds Arizona's primary system as applied to the ALP is unconstitutional, the Court need not answer the question of whether the provisions related to the election of Libertarian precinct committeemen are severable from the remainder of Arizona's primary system. However, if the offending provisions were constitutional, the parties agree and the Court joins in agreement that the unconstitutional provisions related to the election of Libertarian precinct committeemen would be severable from the remainder of Arizona's primary system.

## Background

The ALP brought suit against the State of Arizona challenging Arizona's semi-closed primary system. Arizona's primary system allows voters who are unaffiliated, registered as independents, or registered as members of parties not on the ballot to vote in the party primary of their choice. AZ Const. Art. VII § 10, ARS §§ 16-467, -542. Voters who were registered with a party on the ballot could vote only in their party's primary. The primary ballot consists of all of the party's candidates for all governmental offices and candidates for the party precinct committeemen.

In Arizona, a voter can change party preference any time up to twenty-nine days before a primary or general election. The State also permits early voting to begin thirty-three days before a primary or general election.

For a candidate to enter a primary, the candidate must be a registered member of the party, obtain a number of signatures on a nominating petition, the number is determined by a percentage of the party's registered members (0.5% to 2% depending on the office), and the signatures can come from any person eligible to vote for the candidate. A.R.S. § 16-322. Therefore, the signatures do not have to come from registered party members, but can be the signatures of registered independents or registered members of a party not on the ballot in the election year. *See* A.R.S. §§ 16-322(A), -121.

For the 2004 primary election, there were 856,705 registered Democrats, 976,280 registered Republicans, 17,249 registered Libertarians, and 590,360 voters registered as Independents or as members of non-recognized political parties.

1     In 2002, Andy Fernandez temporarily registered as a Libertarian and acquired the fewer
2 than twenty signatures required to enter the ALP primary for the U.S. House seat in District
3 1.  Mr. Fernandez had a genuine interest in the ALP and reached out to the party's leaders
4 with help for his candidacy.  One of Mr. Fernandez's major issues was promoting
5 nationalized healthcare. On the final day for registering a candidate, the county chairman for
6 the Libertarian Party in Cocnino County recruited another candidate, Ed Porr, acquired the
7 required signatures, and filed the petition allowing Mr. Porr to challenge Mr. Fernandez for
8 the nomination.

9     The ALP used its limited resources to promote Mr. Porr in the primary.  Mr. Fernandez
10 lost the primary by forty-three votes, 286-243.  There is no evidence in the record of how
11 many registered Libertarians were in District 1.  However, to get on the ballot for the primary
12 would require one-half of one percent of the registered Libertarians in the district.  Mr.
13 Fernandez needed less than twenty signatures to become a candidate.  Therefore, based on
14 the limited evidence it is highly likely significantly fewer people voted in the primary than
15 there was registered Libertarians eligible to vote.

16     The District 1 Libertarian Primary in 2002 had 529 people vote in the primary, the District
17 3 Libertarian primary in 2002 had 320 vote in the primary, and the District 4 Libertarian
18 Primary in 2000 had 220 people vote in it.  While the District 1 Libertarian primary had
19 significantly more people vote in it than any previous or subsequent primary for a Libertarian
20 primary for the party's nomination for a US Representative, there is no evidence in the record
21 to indicate whether the increase was due to more registered Libertarians in District 1 than the
22 other districts or because many more people whom were not registered Libertarians voted in
23 the District 1 primary in 2002.

24     This Court ruled Arizona's primary system was an unconstitutional violation of the
25 freedom of association, the State appealed. *Arizona Libertarian Party v. Bayless*, 351 F.3d
26 1277 (9th Cir. 2003).  On appeal the Ninth Circuit Appellate Court affirmed the Court's
27 judgment in part and vacated it in part.  *Id*.  The Appellate Court affirmed the Court's
28 judgment with regard to the finding that Arizona's primary system was an unconstitutional

- 3 -

burden in the selection of the Libertarian Party precinct committeemen. *Id.* However, the Appellate Court ruled this Court could not determine Arizona's primary system violated the constitutional rights of the Democrat or Republican party because neither were party to the suit. *Id.* The Appellate Court also ruled this Court erred in failing to consider whether the participation of nonmembers in the selection of the ALP candidates is constitutional under *Jones*. *Id.* (citing *California Democratic Party v. Jones*, 530 U.S. 567 (2000)). The Appellate Court instructed this Court to consider the severity of the burden of Arizona's primary system on the Libertarian Party's associational rights, whether the State sufficiently justified the burden, and if the State has justified the burden whether the selection of precinct committeemen is severable from the remainder of the system. *Id.*

## Discussion

The Court must first determine the burden, if any, imposed on the party challenging the election law. *Miller v. Brown*, 465 F. Supp. 2d 584, 588 (E.D. Va. 2006). The court determines the burden by weighing the character and magnitude of the burden imposed. *Id.* If the burden imposed is severe or something less than severe, the level of scrutiny used to determine whether the law is constitutional is then determined. A flexible standard applies to election laws, "not every electoral law that burdens associational rights is subject to strict scrutiny." *Clingman v. Beaver*, 544 U.S. 581, 592 (2005).

When a law places a severe burden on the right to associate freely, the law will be upheld only if it is narrowly tailored to serve a compelling state interest. *Clingman*, 544 U.S. at 587. However, the Constitution grants states broad powers to regulate the times, places, and manners of holding elections, so when the law imposes a burden less than severe, the State's "important regulatory interests will usually be enough to justify reasonable non-discriminatory restrictions." *Id.* at 587 (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997)). Regulatory interests are "generally-applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process." *Anderson v. Celebreeze*, 460 U.S. 780, 788 n.9 (1987).

1    There is no *per se* rule determining when a burden is severe and strict scrutiny is
2 applicable. However, in *California Democratic Party v. Jones* the Supreme Court found
3 California's blanket primary system imposed a severe burden on political parties' rights
4 because the record plainly demonstrated "the prospect of having a party's nominee
5 determined by adherents of an opposing party is far from remote - indeed it is a clear and
6 present danger." 530 U.S. 567, 578 (2000). The Supreme Court also stated, "In no area is
7 the political association's right to exclude more important than in the process of selecting its
8 nominee." *Id*. at 575.
9    The Supreme Court reasoned further, even when a candidate favored by the majority of
10 the party wins, "he will have prevailed by taking somewhat different positions - and, should
11 he be elected, will continue to take somewhat different positions in order to be renominated."
12 *Id*. at 579-80. Based on this standard a severe burden exists when a fundamental aspect of
13 the freedom of association is threatened by a clear and present danger.
14    In *Clingman*, Oklahoma's Libertarian party attempted to open up its primary to all
15 registered voters regardless of affiliation, but Oklahoma law allowed a party to only invite
16 those voters registered as independents. *Clingman*, 544 U.S. 581. The Court found the
17 restriction did not create a severe burden because an individual could easily participate in a
18 party's primary by changing their registration and the law did not compel a political party
19 to associate with unwanted members, therefore the burden was only minimal. *Id*. at 587.
20    In *Jones*, the Court noted "the blanket primary also may be constitutionally distinct from
21 the open primary in which the voter is limited to one party's ballot." 530 U.S. at 578, n. 8.
22 The Fourth Circuit Court of Appeals has held the type of association forced by a mandatory
23 open primary causes significant injury to the first amendment rights of a political party,
24 therefore triggering strict scrutiny. *See Miller v. Brown*, 462 F.3d 312, 318 (4th Cir. 2006).
25    The burden imposed on the ALP by Arizona's primary system is severe. Arizona's
26 primary system compels the ALP to associate with registered independents and those
27 registered with other parties who do not have a candidate in the general election. This
28 creates the danger the Libertarian candidate will be selected by voters who are not

1 Libertarians, but by people who are taking advantage of the election laws making it easier
2 to get a person on the ballot as a Libertarian than as an independent or a smaller party.[1] The
3 candidate can then appeal to independent voters and voters registered with smaller parties.
4 The voters can then vote in the Libertarian primary without even changing their registration.

The burden imposed in this case is more similar to the burden imposed in *Jones* than the burden imposed in *Clingman*. In *Jones*, the burden involved forced association in the primary election as it does in this case. However, the amount of forced association was much greater in *Jones* than in the present case because everyone could vote in every primary. However, there is still forced association in this case.

As in *Jones*, Arizona's primary system has created a clear and present danger of a party's candidate being chosen by people other than party members. The clearest example of this is Mr. Fernandez losing by only forty-three votes as a Libertarian candidate while advocating for nationalized healthcare. While political parties can change their viewpoints on everything from nationalized healthcare to "clean election" funds or any other issue. Under the current Arizona primary system it is impossible to identify whether the party is actually changing its position and not invaders changing the party's position. "[A] single election in which the party nominee is selected by nonparty members could be enough to destroy the party." *Jones*, 530 U.S. at 579. Therefore, the uncertainty about who is changing the direction of the party imposes a severe burden on a political party's association rights.

---

[1] As of July 2007, there are 2,649,367 registered voters in Arizona, 1,023,508 registered Republicans, 873,301 registered Democrats, 18,706 Libertarians, and 733,852 Independents or as members of non-recognized political parties. *See State of Arizona Voter Registration Report*, http://www.azsos.gov/election/VoterReg/Active_Voter_Count.pdf (last visited September 24, 2007). Based on these numbers if a person wanted to run for the office of United States senator or state office, excepting members of the legislature and superior court judges, an independent candidate would have to get approximately 3,769 signatures from qualified electors who are either registered independents or members of non-recognized political parties. *See* A.R.S. § 16-322. However, if the same independent person re-registered as a Libertarian, the person would only need approximately 94 signatures from Libertarians, registered independents, or members of non-recognized political parties to get on the ballot as a Libertarian. *See Id.*

1 Although the Libertarian candidate will not be chosen by registered Democrats or
2 registered Republicans, the nominee could still be chosen by registered members of other
3 parties like the Green or National party.  As in *Jones*, the Arizona primary system "forces
4 political parties to associate with–to have their nominees, and hence their positions,
5 determined by–those who, at best, have refused to affiliate with the party, and at worst, have
6 expressly affiliated with a rival." 530 U.S. at 577.  The Supreme Court concluded there is
7 "no heavier burden on a political party's associational freedom." *Id*. at 582.

8 A political party's right to choose its own nominees is a core associational activity and the
9 mandatory inclusion of unaffiliated persons with the political party may seriously distort the
10 party's decision. *Democratic Party of the United States v. Wisconsin ex. rel. LaFollette*, 450
11 U.S. 107, 122 (1981).  Due to the potential distortion forced on the Libertarian party by the
12 mandatory inclusion of those not affiliated with the party, Arizona's primary system imposes
13 a severe burden on the ALP.

14 Arizona's primary system is similar to the Virginian primary system found
15 unconstitutional in *Miller v. Brown*, 465 F. Supp. 2d 584 (E.D. Va. 2006).  The primary
16 system challenged in *Miller* allowed for any eligible voter to vote in any one party's primary.
17 *Id*.  The Republican party in Virginia, desired to have a primary to elect its candidate, but did
18 not want to allow anyone who had voted in another party's primary in the last five years to
19 be able to participate.  *Id*.  The Virginia election board statutorily required all primaries to
20 be open.  *Id*.  A voter could vote in any one primary regardless of affiliation.  The Court in
21 *Miller* while reviewing case law noted regulations that were "mandatory and exclusive" were
22 found to be a severe burden.  *Id*. at 591.  While Arizona's primary system is different from
23 Virginia's system because Arizona's system does not allow a voter registered in another
24 party represented on the ballot to vote in any primary, the primary system still is mandatory
25 and exclusive.  The system is mandatory because the system forces the Libertarian party to
26 accept the votes of registered independents and members of other registered parties.  AZ
27 Const. Art. VII § 10, ARS §§ 16-467, -542.  The system is exclusive because the Libertarian
28 party must select their candidates through a primary process.  A.R.S. §16-301.  In *Miller*, the

- 7 -

1  Court found the burden imposed by forced association imposed a severe burden on the
2  Republican party even though the primary system in Virginia was not exclusive. *Id*. at 595.
3      The State argues the burden imposed by the primary is less than severe because a person
4  could register as a Libertarian and then vote in the primary. This argument fails. The
5  constitutionality of the State's registration process is not before the Court. If the State's
6  registration policy were changed or found unconstitutional and the primary system remained
7  in place, the burden on the ALP would remain the same because registered independents and
8  registered members of other parties would still be able to vote in Libertarian primaries. If
9  anything the ease of changing registration goes to the interest of the state in the statute, but
10 not the burden imposed on the ALP.
11     Arizona's primary system is not justified under a strict scrutiny review. The law is not
12 narrowly tailored to serve a compelling interest. The Court in *Jones* found the interest of
13 fairness and increasing voter participation were not compelling in the circumstances of the
14 California law. *Jones*, 530 U.S. at 584. While these are highly significant values, the aspect
15 of the interest addressed by the law must be highly significant. *Id.*
16     The State asserts the primary law serves the compelling interests of increasing voter
17 participation, enhancing the integrity and legitimacy of the primary process, and promoting
18 fairness by ensuring voters who help pay for elections have a full opportunity to vote. While
19 all of these interests are essential and indeed compelling in the abstract, the aspects of the
20 interests addressed by Arizona's primary law are not compelling. As the Supreme Court
21 found in *Jones* with regards to the California's primary law, this Court finds the aspects of
22 the asserted values do not justify the burden. Integrity and legitimacy are not promoted by
23 the Arizona primary law, "the inequity of not permitting non-party members...to determine
24 the party nominee. If that is unfair at all...it seems to us less unfair than permitting nonparty
25 members to hijack the party." *Id*. at 584.
26     The States interest in increasing voter participation and fairness by allowing voters who
27 help pay for the election to have full opportunity to vote is also not compelling. "A 'non-
28 member's desire to participate in the party's affairs is overborne by the countervailing and

- 8 -

1 legitimate right of the party to determine its own membership qualifications." *Id*. at 583
2 (quoting *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 215-216, n. 6 (1986)).
3 The State asserts no compelling interest to justify the severe burden Arizona's primary law
4 places on theALP.

5 If the Court found the burden imposed on the ALP was less than severe the interests
6 asserted by the State still would not be sufficient to justify the burden because the interests
7 are not "regulatory interests." Regulatory interests promote efficiency, reliability, and
8 integrity of the election process. *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014 (9th
9 Cir. 2002). The Federal Courts have upheld laws which burden the freedom of association
10 such as prohibiting write-in entries, requiring people to present a photo idea when they
11 register to vote, rules barring political party officials and their families or associates from
12 receiving court appointments as fiduciaries, and upholding a percentage signature
13 requirement to get on the ballot. *Burdick v. Takushi*, 504 U.S. 428 (1992); *Gonzalez v.*
14 *Arizona*, 485 F.3d 1041 (9th Cir. 2007); *Kraham v. Lippman*, 478 F.3d 502 (2nd Cir. 2007);
15 *Swanson v. Worley*, 490 F.3d 894 (11th Cir. 2007). However, none of these laws forced
16 people to associate and all of them promoted either efficiency or reliability.

17 The State does not make it clear how or if Arizona's primary system enhances the
18 integrity, efficiency, or reliability of the election process. If anything, Arizona's primary
19 system detracts from the reliability of the primary process because it increases the likelihood
20 a party will be represented by a person who does not represent the party's ideals.

21 The State never attempts to define "regulatory" and continually asserts its interests are
22 important. The closest the State comes to asserting an interest is regulatory is the Kennedy
23 concurrence from *Jones* asserting the state's interest in increasing voter participation is
24 essential to the constitutional order and therefore regulatory.

> Encouraging citizens to vote is a legitimate, indeed essential, state objective; for the constitutional order must be preserved by a strong, participatory democratic process. In short, there is much to be said in favor of California's law; and I might find this to be a close case if it were simply a way to make elections more fair and open or addressed matters purely of party structure.

- 9 -

1  *Jones*, 530 U.S. at 587 (Kennedy, J., concurring).  No Court has ever stated increasing voter participation is anything less than essential.  However, no court has upheld a state regulation burdening a first amendment right because increasing voter participation was the important regulatory interest asserted by the State.  Therefore, even if the burden is less than severe the state failed to carry its burden by asserting an important regulatory interest.

Based on the foregoing reasons the Court finds Arizona's Primary System allowing for independents and members of non-recognized political parties to participate in the Libertarian primary unconstitutionally burdens the Arizona Libertarian Party's right to freely associate.

Therefore, IT IS HEREBY ORDERED:

The Defendant is permanently enjoined from requiring the Libertarian party to allow voters who are not registered as Libertarians from casting a ballot in any Libertarian primary.

The Clerk shall enter Judgment and CLOSE the case.

DATED this 25th day of September, 2007.

_____
Raner C. Collins
United States District Judge